Good afternoon, ladies and gentlemen. This is the time set for rehearing en banc in the case of Smith v. Davis. You may proceed. Good afternoon, and may it please the Court, my name is David Porter. I'm an assistant federal defender from the Eastern District of California, and I represent Anthony Smith, the petitioner in this matter. A year is a year is a year. Congress gave prisoners a full year to file federal habeas petitions. Under the stop clock rule, equitable tolling lasts during extraordinary circumstances, and that time is simply added to the limitations period. This Court should continue to apply the stop clock rule for three reasons. First, it is consistent with traditional equitable tolling principles set forth in a long line of Supreme Court cases and this Court's en banc precedent. Two, it better serves the statute of limitations policies of promoting certainty and uniformity. And three, the alternative approach, diligence through filing, is needlessly difficult to administer and usurps congressional authority. So the way the Supreme Court has formulated the extraordinary circumstances prong was extraordinary circumstances that prevented timely filing. So there's a causation element. Can you explain here how the alleged extraordinary circumstances and effective assistance of counsel prevented timely filing? Yes, Your Honor. And I believe that the test you're referring to is from Holland, and that test must be read in light of the Supreme Court precedence of Burnett, which creates the stop clock rule. It's stated in Menominee also. It's stated in a number of the Supreme Court cases with that formulation. Yes, Your Honor. But the decision in Holland, nothing in Holland, okay, suggests that it is intended to make equitable tolling any more difficult for habeas petitioners than any other litigants. In fact, you said that Holland has to be read in light of a case called Burnett. Burnett. But didn't Holland, in that phrase that was just quoted by Judge Ikuda, didn't it quote the precise language of Pace versus de Gilmo? It did, Your Honor. Well, it's kind of hard to use Burnett if they're quoting Pace, isn't it? Well, Your Honor, in construing Holland, Holland is a judicial opinion. It's not a statute. We're not construing every single word of an opinion like we are a judicial statute. And it must be read in light of Supreme Court precedent. Judge Ikuda has said, with regard to quoting Pace, it had to stand in his way. It had to prevent his filing. So how does a rule, a stop-the-clock rule, comport with the requirement? How, in this case, did this delay, which ended 10 months before the clock ran, how did the extraordinary circumstance prevent your client's filing? Well, the 66-day delay was actually a 5-month delay, but only 66 days within the statute. The 66-day delay in returning the appellate file to Mr. Smith took that time out of the statute of limitations. He was not able to work on the petition during those 66 days. Isn't the question whether these opinions mean prevented him from timely filing during the period that the circumstance was there? Exactly. And, therefore, don't resolve this question of whether you back out all that time entirely. That's correct. Whether it took out of the year, the full year that Congress gave, whether those extraordinary circumstances shortened that year. Well, whether they prevented him from filing during that period. During that period, yes. So is that what it says, during that period, or it just says prevented timely filing? Do we have to take the word timely out, that it prevented filing, or that it's? I think you have to read timely as including the equitable tolling period, as Burnett held. Well, so normally prevented timely filing, we would read it using normal English, that it prevented him from meeting the deadline. And so he had 66 days that were removed, allegedly, by the ineffective assistance of counsel. How did that prevent him from meeting the deadline? So that's what we have to understand if we give effect to this language in the Supreme Court cases. It has to also be read in light of Espinosa Matthews, Your Honor, where this court held that a petitioner was entitled to equitable tolling for time he was denied access to his legal materials. In that case, by a prison, explaining it is unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitation period without access to his legal file. Let me, can I ask you to, rather than focusing on language from our cases and other cases, it seems to me we have a dichotomy here. We have the Supreme Court saying in Ardis that generally the stop clock rule is the way you look at equitable tolling. And we have the Supreme Court in Pace not using the stop clock rule to look at equitable tolling in the context of an AEDPA case. How do we reconcile the two? That's the issue for me in the case, not whether or not we can isolate language from either decision that says something. Are the two reconcilable? I think you're correct, Your Honor. And they are reconcilable when you look at Pace. It's been argued by the warden that Pace decides this case because they refer to five months of delay after the state habeas is concluded and the filing of the federal petition. And the warden has argued that Pace requires that same requirement here, that you look to that post-extraordinary-circumstance delay and it's lacking in that control. But I would submit, Your Honor, that Pace does not decide this case. Didn't Pace, didn't the Court say that not only did the petitioner sit on his rights for years before he filed his PCRA petition, but he also sat on them for five more months after his PCRA proceedings became final? That was one of the considerations that he wasn't entitled to equitable tolling. In other words, they looked at his diligence both before and after the PCRA proceeding became final, the extraordinary circumstances. Mr. Your Honor, Pace held that the petitioner was not, had not established the requisite diligence during the five years that were available to him earlier Pace focused in part on a time period of time. It's a strange case because the statute of limitations, in effect, reset with EDPA being passed. But Pace focused, Judge Acuda's question is, I think, the one you need to address. Pace focused both on lack of diligence before the statute began to round, which is a strange sort of thing to think about in equitable tolling, and then on afterwards. And so the question is, was it based on both, either one or independently one of the two? That's the question that I need to resolve. I think it was based independently on the five years, and that was the holding of the case. As the Second Circuit rejected an identical argument, Your Honor, and they said, we understand the latter observation, referring to the five months, only to reinforce the adverse diligence determination for the period for which tolling was solved. That's sort of an interesting reading. But didn't Holland also say that? That not only was he diligent before seeking information from his attorney, but there goes the very day that Holland discovered that his EDPA clock had expired, he prepared his own habeas petition pro se and promptly filed it with the district court. So, again, they're looking both before and after the event that was constituted in extraordinary circumstance. In Holland, the Court made that observation during the factual recitation of the case. It had nothing to do with the Court's holding. The Court's holding in Holland was that the statute of limitations in ADPA is not a statute of repose. It is not a strict one-year. Counsel, in Holland, the Court also said that the purpose of the rule was to correct particular injustice, and we must avoid mechanical rules. Aren't you proposing a mechanical rule? The rule I'm proposing, and that this Court has upheld in Sokup-Gonzalez, an in-bank decision of this case, Your Honor, is a bright-line rule, but it works within equitable tolling. First, the petitioner has to show diligence during the period. The petitioner has to show extraordinary circumstances. Those are the equitable considerations. But then principles of certainty that the statute of limitations is intended to correct, as explained in Sokup-Gonzalez. And you need to have an articulable rule that gives the parties notice that when the extraordinary circumstances stop, the clock begins to run again. That is the certainty. Kagan. You said there's no causation rule, but there is a species of causation rule embedded here, is there not? In other words, it has to be that whatever happened during the extraordinary period was at least plausibly causing him to be unable to file during that period, and things that happened afterwards might throw some light on whether that's true or not. Well, Your Honor, I think that including a — the causation requirement is not dismissed by the stop-clock rule. It's that the extraordinary circumstances cause some period of time, as Your Honor said, during the extraordinary circumstances, that the Petitioner was impeded from using that MRR. So if, for example, he didn't have his materials, and that might in some circumstances be an impediment during that period. But as it turned out, he had the box, but he never opened it, and he simply went ahead and filed his, you know, whatever he had earlier, which I gather is — factually, I think one cannot come to that conclusion here. But that might tell you something about whether or not there was, in fact, an extraordinary circumstance that stood in his way during that period. Yes. But, Your Honor, I think the Court needs to look at the tremendous constraints under which prisoners are under. They are often illiterate and or uneducated. They generally proceed pro se. They face a staggeringly complex body of habeas corpus procedural law. I don't understand what that has to do with my point. I mean, yes, I understand that it is so, but not having the — if you're entitled — your position is if you're entitled to a year, you're entitled to a year. And if this was a circumstance which made part of that year not usable, for what it is you had to do, then you are entitled to just back that period out. But you still have to know something about what that circumstance is. Yes. And whether it was really standing in your way, which has a causation element itself, as well as some connection to perhaps to what happened before and after. Well, absolutely, Your Honor. But I think that if you look at diligence after the extraordinary circumstances have passed, then you are destroying the benefits of the stop-clock rule. There is no certainty.  And it's a completely subjective test. So there really is no causation requirement at all because the — what Judge Berzon is positing, which you're not completely accepting, but that has causation, but that takes out the certainty that you say is the benefit of the stop-clock rule, right? No. The causation requirement remains during the period of extraordinary circumstances. So you want us to read the Supreme Court's language to say extraordinary circumstances that prevented filing within the period of the extraordinary circumstances. Is that — because that's not what it says. It says that prevented timely filing. But to reach your conclusion, we would have to say that prevented filing during the period of extraordinary circumstances. Is that what you're saying? That's exactly what Bennett says. That's what Socop Gonzales says. Right, but we're sitting here on box and we're looking at what the Supreme Court said. That's what Bennett said. A Supreme Court case in 1965 that declined to agree with the argument being offered by Respondent today, which is that you get a reasonable amount of time after the extraordinary circumstances have lifted. Counsel, did I understand you earlier to say that we should not apply pace to this case? I don't think pace has a lot to do with this case, Your Honor. Pace is primarily about statutory tolling and not equitable tolling. In the last three paragraphs, they address equitable tolling. And the way they do it is they point to the five-year delay between the — between the finality — or between the first set of State habeas and the second set of habeas. If we disagree with you about that, do you lose? Yes, I think that's correct, Your Honor. Do you give any significance to the fact that in pace, although the last three paragraphs in the majority opinion dealt with equitable tolling, none of the dissenters disagreed with that? Because I don't think that that was the focus of the argument. The five-month rule was merely advancing the argument, was reinforcing the conclusion that the five-year delay was deadly to the petitioner. Isn't another way to look at that, that the five-month addressing that was dicta, but doesn't dicta, even from the Supreme Court, even if it wasn't an actual holding, shouldn't we give due deference to that? Your Honor, I think that it's not even dicta in the sense that it was an holding that is very clear about the five-year delay. And as Harper v. Eric Hole rejected the very same argument, and that's the reason they gave. The question put differently is, what if there were only a five-month delay in pace? Can you read from the Supreme Court opinion what it would have said? Exactly. Even if — Well, that's the question. So exactly is not the right answer. Well, so I had written out your statement, Your Honor, pretty much. If pace had said, even if Petitioner was diligent during the five years it took to file the second round of State habeas proceedings, his delay of five months in filing his Federal petition precludes — Was pace a situation, or wasn't pace a situation, in which before AEDPA, and therefore during this four-year period, what was applied was essentially a latcher's rule? Yes. To the filing of habeas petitions. In fact, in that — And it seems to me what they were doing here was they were applying essentially that rule, the rule that applied during the five-year — before AEDPA, because of this overlap between AEDPA and non-AEDPA. And so they were saying that he overall was subject to latches, essentially. Yes. Which is what would have happened before AEDPA. And one of the parenthetical citations in Pace's quotation refers to gross latches, Your Honor. And in the facts of pace, what actually happened? Didn't pace file his Federal petition on December 24th, 1999, two days short of the 365 days that would have been extended? So, and we have a case — Pace was actually similar to this case. He did file in time, if you applied stop clock. But the court did not apply stop clock. Well, as I think Judge Berzon said, that the gross latches — I'm not talking about the language. I'm talking about the facts of the case. In the event of Pace, Pace did file within 365 days, if you give him the seven months statutory tolling. And that was dealt with by the court. So that would be the same case that we have here. I disagree, Your Honor. I think that Pace dealt with a very, very different set of circumstances. Well, counsel, the government, in its brief before the panel, put in the math that Judge Bea cited. Do you agree with their math, 363? They might have been off by a day or so, but do you agree with their math? I have no reason to question the math that was set out there. But all of it ensued after a four-year delay under the old — which, under the old principle, would have been enough, essentially, to leave him out anyway. That's correct. Can I ask a question? Is there any Supreme Court case that prevents us, or would prevent us, from considering the diligence after the extraordinary circumstances has been taken care of? Yes. The Burnett case in 1965 specifically rejects that argument and says that if you take a look at the diligence after the extraordinary circumstance has been removed, then you are destroying the benefits of the stop-clock approach, the stop-clock rule that promotes the certainty and uniformity of statutes of limitation. But that's not an ad but case, is it? It is not an ad but case, but this Court has adopted that in Sokoop-Gonzalez, has adopted it in Gibbs, it has adopted it in Grant, and — But if the Supreme Court believed that, it would be odd that they would even reference — even if it wasn't dicta, whatever you want to call it — it would be odd that they would even reference the five-month period in Pace if they felt that they were specifically excluded from considering it. No. And I think one of the things that you should look at, Your Honor, is if you redefined equitable tolling, Justice Scalia didn't get the message because in his 2013 dissent in McQuiggan, he described equitable tolling as extending the deadline for a filing because of an event or circumstance that deprives the filer through no fault of his own of the full period accorded by the statute. That comports with the stop-clock rule. That is the stop-clock rule cited in 2013. So Pace did not — Unfortunately in dissent, right? Well, but — But also the recent majority opinion in Artis goes into this a great length, and I don't know why you're not relying on that, but you're not. I am, and I've relied on that extensively in the briefs, Your Honor. So I understood Artis to say — explain to me why this is wrong. If you meet the two requirements for equitable tolling, which is diligence and extraordinary circumstance that prevent filing, then Artis says, we understand tolling to mean that the statute of limitations is suspended for the period of the extraordinary circumstance. But I didn't see anything that suggested that you did that before you determined whether the party seeking equitable tolling meets the two requirements. I don't think there's anything about diligence discussed in Artis. Right. Artis says, how do we read the statute of limitation, the word tolling, and explains it's a suspension. But the other cases that talk about the two requirements for — to qualify for equitable tolling, I saw nothing in Artis suggesting that that was incorrect. Talking about impeding the filing during the period of disability, were they not? That is correct. And I point out that the exact same filing in Artis that was dismissed in the federal court could have been filed the next day in state court. There was nothing that had to be changed around for that. But the question, and the reason that the questions are focusing on this, is whether this impeding language means prevented you from filing it on the last day of the year without considering that period in between, or whether it impeded you from filing it during that period to which equitable tolling is applied. I must say the Supreme Court has been extraordinarily opaque in trying to figure out what that means, and so that's why it's hard for us. Thank you. I'd like to reserve the remainder of my time. Could I ask one last question? Yes. The Gibbs opinion made some attempt to reconcile us, all of this. And I'm wondering whether something along those lines, i.e., a downplaying of the post period, but a recognition that it may be pertinent to the causation question, would be a helpful reconciliation. I think that the causation period within the relevant time period, but that the post period may tell you something about that. I think that is one way to reconcile the cases that would be helpful in some portion of them. Thank you, counsel. May it please the Court. Excuse me. Justin Riley on behalf of the Warden. It's important to look at what the Supreme Court said in terms of what they did. In Pace, granted the equitable tolling holding, only occurred on two pages, but they set forth the facts and procedure for pages and pages before. So in Pace, do you think their reliance on the five years before the statute of limitations began to run was just Supreme Court dicta to which we might pay special attention or might not pay special attention? The Supreme Court in Pace does focus on a long period of time before the statute of limitations began to run, does it not? They set forth facts that the Petitioner, Pace, sat on his rights for years before. Okay. They highlight before. And so they cite that fact. Is that fact an irrelevant fact? Is it dictum, or is it part of their holding? It is part of their holding. So doesn't that distinguish your case from Pace? Where Pace would – there's no argument that the Petitioner in this case set on his rights before the statute of limitations began to run. It does not appear that he set on his rights before. Right. So we have a different set of facts in Pace. And I don't mean this as a trick question. I'm just trying to figure out how we – what we read Pace for, because it relies at least to some extent on a long period of time that we would never look at in a statute of limitations case because it's before the statute formally began to run. So what do we do with that? That's my question. The court in Pace said that the Petitioner was not diligent. In explaining his lack of diligence, they pointed to a five-year period before, I think a few years before, and a five-month period after. I don't know if those work in conjunction. Neither do I. That's why I'm asking the question. But the important thing here is it's contrary to what SACOP requires. And SACOP requires that the diligence analysis only occur within the period of impediment. Pace analyzed diligence outside the period of impediment. So what would – just to get sort of a level of theory up, what would be the – there are various reasons in SACOP-Gonzalez and elsewhere for preferring a stop-clock rule, basically that a statute of limitations is inherently arbitrary, gives somebody a certain amount of time, and they ought to have that amount of time, and otherwise you are creating a set of judge-after-the-fact rules that nobody's going to be able to predict, and so on. What is your counterpoint for why we ought to be doing it your way? I believe that the counterargument to my argument is that there is a predictability. No, no, I don't want the counterargument to your argument. I want your argument. What is the theoretical justification for if somebody is otherwise entitled to a year and for some period of that time, let's assume that we've massaged all the relevant factors, all the causation factors and everything else, he couldn't file during that year. Now, when you are talking about not having papers, that may be a slightly mushy rule to begin with. But if we have something, you know, he absolutely couldn't file during that period. He was in an insane asylum or something. I don't know. He absolutely couldn't. Then why — what is your justification for not backing out that period and giving him less than the amount of time that Congress said was available to file that petition? I mean, it's not unusual that people file petitions on the very last day, even if they could have filed it in the 364 days before. So why is this person different, is the question. It's the causation requirement. And Holland stated the causation requirement in the conjunctive. And that was, stood in his way. But you're just relying on words now. I want to know, as Judge Holmes has been asking, what is the rationale for that? Because equity is need-based. It addresses actual need. It would be almost frivolous to ask whether or not you actually needed the extra two months if you didn't analyze whether or not the Petitioner could have filed it at 10 months earlier. All right. Suppose the time had already run. The time had already run. Suppose he had — didn't have the boxes for the entire year. All right. Then what happens? He would still have to meet the elements of PACE, and that is an extraordinary circumstance. All right. He doesn't have his boxes. He absolutely can't file during that period. It uses up the whole year. If he absolutely cannot file, and with reasonable diligence he could not file, then he's going to have to file. Then what? Then when does he have to file? If he gets his boxes on the 366th day, now what? With reasonable diligence, we ask when he could have filed. And who's going to decide what that is? I mean, Congress decided you're supposed to have a year, and you're saying that we're supposed to now decide whether he could file it in one day, one month, or six months or a year. Reasonable diligence is a standard this Court applies all the time in criminal contexts and civil contexts. What does — Let's take Judge Berzon's question in a factual sense. Okay. I think I know what your answer is going to be, but let me just ask it. Let's assume he's got his petition all prepared, and he says, I'm going to file it on the 364th day. Okay. Plans to file on the 364th day, and on that day, he and his attorney both fall into  Okay. And they file it late. Are they entitled to that one day of equitable tolling? It's difficult to concede any hypothetical for equitable tolling. It's very fact-specific. Well, I know, but this is a very fact-specific. These are all the facts in the world. That's what's the nice thing about hypotheticals. I don't have to worry about other facts you might think up. These are all the facts in the world, equitable tolling or no. The Supreme Court in Pace would indicate that we would analyze whether or not the petitioner was diligent before the period of impediment. So that he doesn't get the whole year because on the last day, he's in a coma. If he was not reasonably diligent before. That is correct. And I think that's your reading of Pace. That is correct. That's a fair reading. Does that rule make any sense at all? It makes sense when you see it in action. What Pace is asking is, could the Petitioner have filed on time despite the impediment? Remember, the Petitioner. I mean, somebody who files on the 364th day could have filed on the 250th day, for all we know. Absolutely. That person has a room. But when somebody has an extraordinary circumstance, they're going to be treated differently than someone who didn't have an extraordinary circumstance. Yes. They're in a different class. So they don't get the full year is what you're arguing. We wouldn't look. Because normally, nobody has an extraordinary circumstance. They get a year. And we don't say, hey, what did you do during that year? Correct? And you're saying these people who had already an extraordinary circumstance, we're going to treat them differently. And you say that the Supreme Court has said we're going to treat them differently. Correct. And we're going to watchdog them and make sure that every minute of their year was used. And we're going to rely on district courts. And if I think something is reasonable and Judge Hurwitz thinks something is not reasonable, that's okay. You're saying that's what the Supreme Court has told us by pace. That is correct. The statute provides every petitioner, regardless of what happens to that petitioner in the year, 365 days from the date of finality to get their petition in on time. How does that not go completely against what Congress intended? Because Congress did not write in unimpeded year. They just said a year. Didn't write in equitable tolling either, but the Supreme Court read equitable tolling in the statute. Exactly. So now as judges, we're reading into the statute. Why don't we read in the normal application of equitable tolling, which is the stop clock rule? The stop clock rule is not the normal. Is that what the Supreme Court said in Ardis? No. In Ardis, the court was construing a statute. The petitioner in Ardis had already established that she was entitled to the statute. Yes, but in the course of doing so, it told us what equitable tolling is in general. The court in Ardis was not construing either diligence or causation or anything to do with whether or not somebody was entitled to tolling. No, but they were stating the general rule. They said the general rule for equitable tolling is, and then they said what the stop clock rule is. And so the question is, do we have a different rule in AEDPA or? Not at all. What the court said in Ardis was what happens after a petitioner has shown that they are entitled to tolling. That begs the question how they show they're entitled. What happens after they show they're entitled is what Ardis was commenting on in a statutory tolling context. Remember, that petitioner had already showed entitlement to statutory tolling. If we take the hypothetical of the person who had a year and on the last day when he was planning to toll, fell into a coma, if in the prior 364 days he had been diligently working towards filing, was ready on the 365th day and fell into a coma, then what you're saying, if I'm understanding it, is that the tolling he would get under Ardis a suspension of the statute of limitations for that day when he was in a coma or for however long he was in a coma. Am I understanding that correct? So he had extraordinary circumstances. He was reasonably diligent for 364 days, and then he had extraordinary circumstances that prevented him from filing. And then Ardis kicks in. Is that what you're saying? So he would get, so the statute of limitations would be suspended for that one day? Yeah, I like Judge Akuta's answers better than your original ones, so you can adopt them. That is quite possible, that equity would apply to stop the clock in that situation. That is quite possible after the person has shown they are entitled to equity. But Judge Hurwitz's hypothetical and my hypothetical was, suppose he was intelligent. Suppose he just did what he was entitled to do, which is wait until the 365th day and he didn't even start working it until the 275th day, okay? He did nothing for 275 days. We're able to establish that. Any litigant can do that, right? Any litigant can do that unless they want to show they're entitled to equity. Equity requires diligence at all times. So each Petitioner needs to calculate their days of extraordinary circumstance and subtract that and make sure that they know that they get that exactly right, even though they don't know exactly what that's going to be. Let me ask this in a different, I mean, because that's what you're saying. Every Petitioner who had an extraordinary circumstance that is justified as an extraordinary circumstance needs to be counting the days on top of being diligent in trying to get his petition filed and make sure that he gets that calculation right. So let me ask this way. Let's assume that instead of 66 days, Mr. Conklin took 8 months to respond to Mr. Smith and provide him with the state appellate record. In that case, I guess, would you require Mr. Smith to file his petition in 4 months? If with reasonable diligence he could, then he is required to do so. And would that be sufficiently diligent? I mean, how about if it's 2 months? If with reasonable diligence he could. And let's say a judge in California thought it was, but a judge in New York thought it wasn't. Under the same circumstances, does that support the congressional intent? Congressional intent is that every Petitioner receive 365 calendar days from finality to file. If they are outside that statutory period and fall into a different category of Petitioners, they must meet the equitable tolling standards. But it opens it up to what's reasonably diligent. I thought that's what the Congress was trying to stay aware of. It seems like they were trying to give everybody a year, one per year. And every Petitioner does receive that year. So if somebody gets a year but has a situation where they need to look to judges because the equitable tolling is judge-made law, correct? The Supreme Court has traced it back to common law. And so different judges will apply equity in different ways. I take it. Yes. So you're saying the person who's seeking to establish that he or she qualifies for equitable tolling then has to show, prove to that judge or that court that they met the diligence, et cetera, and different judges may come out a different way. I guess I'm not understanding. Is that something that Congress understood, assuming that they drafted the statute against common law principles, would they have understood that different judges would decide things different ways? Absolutely. Every Petitioner with a burden of proof is going to have to make his or her case to different judges. It may or may not come out differently. Can different judges decide differently as to what constitutes an extraordinary circumstance?  Every standard is open to judicial interpretation. But there's no standard. You see, that's the problem. Reasonable, what does reasonable diligence mean? It has to have content. What's the content? Am I supposed to be staying up all day and night? Am I supposed to be filing something that really isn't what I, you know, has a good chance of being bounced because it's not really adequate? What am I supposed to do? Reasonableness is a standard that judges everywhere apply every day. Reasonable diligence is doing what you can when you can. But isn't this why we have a statute of limitations? The statute of limitations is what the statutory provision for the statute of limitations provides certainty. 365 days is certain. If you want more than that for whatever reason, you have to prove equity. Equity is not certain. It can't be. But you don't have to prove that if you didn't have an extraordinary circumstance. You don't have to prove anything if you make it in on time. That puts you in a different class of Petitioners. Petitioners who want more time must make a showing. That's what equitable tolling requires. Yes. That there's an extraordinary circumstance which includes a causation requirement that you actually couldn't do it during that time period. And diligence. So you have to make a definite and somewhat flexible showing. But after that, then what? It is a case-specific and backward-looking standard. There is no certainty. If Petitioner in this case was on day one of missing his transcripts and he thought, you know what? I really need my transcripts. On day two, he thought, you know what? I really need my transcripts. He can't have certainty that this Court will tack on to the end of his statute of limitations period every day he was without his transcripts. What he can know with certainty is I must be reasonably diligent. I must do what I can when I can. What does tolling in ordinary English usually mean anyway? Tolling, says Artis, means stop the clock. Right. And that's what we're talking about, equitable tolling. That begs the question, how does one show entitlement to stopping the clock? That's what Artis didn't discuss. I thought all the judges in this case assumed arguendo that there was a period of impediment. It may not be true. If we were to send it back for fact-finding, a district judge might say the time period that you had to wait for the record really wasn't an impediment because you could have been doing other things. But everybody in this case found that there was an entitlement or that there was a period of impediment as a matter of assumption. So what is it? We can't make that determination in this case, can we? Well, the Court in the district court below assumed for the sake of argument.  So did the district court. The district court did. The panel before did. So don't we have to assume that there was a period of time in which he was impeded because that's what both courts below us assumed? Remember, the impediment must also prevent timely filing. No, I understand. That's what the conjunctive language was in Holland. I understand. Stood in his way and prevented timely filing. We can't assume that the Supreme Court was just using superfluous language. Those two phrases must be used. Do you know a different Supreme Court than the one we deal with all the time? Could I also ask you just to change the topic a tiny bit? The opposing counsel relies on Burnett and also cited, I think I heard him say Bennett, but I'm not sure, to say that those require us to come out his way. Could you address those cases for me? If I understand correctly, I did hear Burnett. I don't know that I heard a different case, but I'm ready to distinguish Burnett. Burnett was a FELA case in which the petitioner timely filed her FELA complaint in the wrong court, and it was toward the end of the limitations period. And they didn't effectively allow her to transfer her petition, and so it was dismissed, and she didn't get back into the right court on time. The court in Burnett was lamenting the fact that FELA complaints could be filed in both federal and state courts, and state courts all over the nation had different statutes of limitations for those causes of action. That's why the court was looking for certainty there. They were trying to allow petitioners to know when they could file on time. And what about here? And the petitioner in Burnett did file on time. She got to court on time. It was just a venue problem that kicked her out. And so they applied equitable tolling to show, you know what, if you get there on time. But it rejected a system where the statute is tolled for a reasonable time. It rejected a system whereby if the case was dismissed, that the petitioner had more time. And remember that that is inconsistent with what Pace did. Pace looked at lack of diligence before and after. Can I ask a related question? Suppose that we have Judge Hurwitz's hypothetical and the error, and he has a one-day tolling because of his coma, and so he gets one extra day, and he doesn't file within that one day. Does he now get extra time for diligence? In other words, is this a two-edged sword, that the diligence both can expand and contract the limitations period? Reasonable diligence will expand the limitations period. Beyond what it would be if you applied a stop clock, a stop clock. How reasonable diligence expands the limitations period will look different in every case because it's very case-specific. I can imagine a scenario in which a petitioner would get more than a year, if the A petitioner with mental challenges, an incarcerated, mentally challenged petitioner, with reasonable diligence cannot meet the year. Working diligently every day, she can possibly file in 14 months. And she does. On the last day of the 14th month, she files on time. Is there a clock? Did it stop? I don't know. But with reasonable diligence, she filed as soon as she could. She's in. That is a situation in which resort to a clock, and whether or not it stops, is probably not helpful at all. Sometimes, as Judge Hurwitz described, maybe resort to a clock, and what equity looks like with regard to a clock may be very helpful. But you still have to meet the elements of equitable tolling, and you have to do it in the way that Pace gave us an example of how to do it. Well, but Pace didn't. I mean, Pace said a sentence which had the 5 months in it, but it didn't talk about any of this, any of the very complicated issues we're talking about. So it's, it's, it applies to the facts of the case, but it certainly doesn't, doesn't seem to go further. But I do have a question about what you said about artists and the stop clock or Burnett and the stop clock. Yes. The, if there is, you said that the stop clock starts once they've met the elements of the two elements, including the diligence. But that doesn't mesh. It doesn't work. I mean, in other words, if diligence itself is a time period as to what the reasonable period is that they should have filed, then there is no stop clock. I don't know that I understand the question fully, but reasonable diligence is a time period. Well, maybe you could explain to me how artists, you said that artists is not inconsistent with this approach, or Burnett isn't, because first you have to prove that you're entitled to equitable tolling, which you say has two elements, including the extraordinary circumstance and diligence for every time period. And once you do that, then you get a stop clock. But you never get a stop clock on that theory, unless I'm missing something. If you show entitlement to equity, you get equity. You get relief. But you don't get a stop clock. How equity is applied is access to the courts. Okay. If that helps the court, if it helps the court to describe that as stopping and starting a clock, then that's how it works. But it's not consistent with the artist's vision of tolling, or with the ordinary English of tolling. In the statutory context, once someone is entitled to tolling, the court and artist said that the clock stops. It was setting, stopping the clock against a grace period. And so what Justice Ginsburg said in that case is it's not a grace period, it tolls the statute. It was a statutory construction case. If this court is inclined to think that artists implicitly overruled PACE, it must wait for the Supreme Court to explicitly say that. Can I ask you just a general question? Yes. Are you asking us to adopt an AEDPA-specific equitable tolling rule, or is the framework you want us to adopt here, do you envision that applying across the board, no matter  I suspect that it will apply across the board. PACE has been applied in many, many different kinds of cases. I saw FILA cases. There's nothing special about AEDPA equitable tolling, but it depends on the statute. I mean, it may not be AEDPA-specific, but here we have a situation where there's no tolling that's provided by Congress specifically. So, I mean, it doesn't apply across the board. It would apply to specific cases where it's statutes that apply in the same way AEDPA applies, wouldn't it? When equitable tolling applies, PACE is the standard. And I've seen the Supreme Court and other circuits apply that in many different contexts. I can't tell you what the outer bounds of equitable tolling might be for any particular time period, but it does apply in many different contexts. PACE faithfully adhered to the principle that equity addresses actual need. Petitioner argues that this court should not do affect specific inquiry of his need, but it's frivolous to determine whether an impediment prevented timely filing without asking whether Petitioner could have filed in the time he had left or did it prevent timely filing. Petitioner would prevent this court from asking the questions PACE asked and encourage this court to ask questions that PACE ignored. He asks that you reach a result contrary to PACE. If this court is to establish a new diligence requirement for this circuit, it must apply its test for diligence to the facts of PACE. If the test yields a different result, the test is invalid. I'd love to answer any more questions. Thank you, counsel. Thank you. As Judge Marghia pointed out, you don't have to take account of every day. That demonstrates the unworkability of the proposal of the Respondent. You don't have to file early. That's the point of a statute of limitations. But isn't the safer thing in a situation like this just to file timely? If you can, just do it. If there's other things in the prison system that would have precluded him, he could have brought that forward and then we'd find out whether there's another extraordinary circumstance. It is always safer, yes, to file earlier. But then why shouldn't we adopt a rule that encourages that? It doesn't encourage not being safe. It encourages using the time that Congress has given you. But that's not correct. Congress gave a year. If you're asking for an exception to that, he's taking a risk as it is. He doesn't know whether the court's going to find that him not having the records is an extraordinary circumstance. So why don't we just say get it done? He filed within a year of the date he got the appellate record, did he not? Yes, Your Honor, he did. But he didn't file within a year that Congress gave him from the date of the filing. But Congress has assumed to have passed legislation in light of the law as it exists. The law existed with equitable tolling and with Burnett on the books explaining the principle of stop clocks. So Congress already intended that when it passed the statute of limitations. Counsel, in Pace, the court said Petitioner's lack of diligence precludes equity's operation. It didn't say Petitioner's lack of diligence before as opposed to after. Why doesn't Petitioner's lack of diligence here preclude equity's operation? I think you have to read Pace reasonably, Your Honor, with the emphasis on the 5-year gross latches. Can I ask, on the facts of this case, I mean, where are we factually in this case as to whether he was diligent or wasn't diligent or what he did during that time period? We don't actually know, do we? No, we don't. We know that the magistrate judge says that the he was diligent during the period of extraordinary circumstances. Right. And after that, there's a dispute about mainly where he got this factual 17-page or so factual section that he included in his petition, which was not in the State petition and which the State says, but we don't have any record, was in the State appellate brief, and we don't know the answer to that, so we don't really know what he was doing for those 10 months. We don't, Your Honor. Well, the magistrate said the Petitioner has offered no explanation as to why he was diligent. The magistrate judge said, Your Honor. Under the stop clock rule, and I would just leave the Court with it. This is from Judge McKeown's opinion in Lott. Rejecting the stop clock would have courts left drawing lines within lines that create new limitations within the one originally imposed by Congress. Are you asking for an evidentiary hearing or for a ruling on the current record? I think that we win under the stop clock rule as it is applied in Sokop-Gonzalez. But if the Court has questions about that, about whether the record is sufficient, then the Court can remand for an evidentiary hearing. But I think that Judge Berzon's point bears repeating that diligence has to have a context. You can show that you were diligently overcoming some impediment, some extraordinary circumstances, but the open-ended inquiry of diligence through filing is just, how diligent do you have to be? Do you have to work one hour a week, one hour a day? There is no standard. It's a standardless and uncertain. What's your response to opposing counsel's statement that judges apply a reasonableness standard in all sorts of contexts? And even if there's a range of variation, we certainly know what it means. What's your response to that? You think we don't know what it means? I think that's where context comes in. It is possible to determine what reasonable diligence is when you have identified extraordinary circumstances. The Petitioner asks the burden of coming in and saying this. It's not. You can't determine what reasonable diligence is when the question is whether you were reasonably diligent in preparing your legal documents for filing. That is something that courts should not address. Out of context, that has no meaning, I think. Thank you. So I would urge the Court to follow the Supreme Court and this Court's decision in Sokup-Gonzalez, reverse the decision of the district court, and remand for consideration  Thank you, counsel. The case to start will be submitted for decision and will be in recess. All rise.
judges: Thomas, Gould, Berzon, Rawlinson, Bea, Ikuta, Murguia, Watford, Hurwitz, Bennett, R. Nelson